THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* DIONISIO FUENTES, Defendant and Appellant.

Nos. 7789 and 8000. Argued April 5, 1940.—Decided May 3, 1940.

*Arturo Aponte* and *F. Rebollo López* for appellant. *R. A. Gómez,* *Prosecuting Attorney (Fiscal),* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Policeman Fidel Rodríguez filed two complaints against Dionisio Fuentes in the Municipal Court of Río Grande, for aggravated assault and battery and for carrying prohibited weapons, respectively.

Upon conviction in the municipal court, the defendant took an appeal to the District Court of San Juan. Both causes having been called for a trial *de novo,* it was stipulated by the parties that the evidence be heard jointly. The court approved the stipulation.

Four witnesses took the stand for the prosecution, to wit: Carlos Pérez, Campoamor Rivera, José Antonio Carrasquillo and Fidel Rodríguez.

Carlos Pérez testified that about the 25th of August "I was coming from the store where I had bought some staples for my home and on reaching the railway crossing and heading for the river ford he (Dionisio Fuentes) was coming down driving a cow to the municipal pen, and shortly afterwards I went on in the same direction in order to cross over to my home and he was coming down with the cow and then appeared Campoamor who was coming from up there and I saw them grappling with each other and when I reached there both were fighting to get the cow, and then I arrived and at that moment Campoamor loosened the cow, and this man (referring to the defendant) drew a machete and attacked him, and I stepped forward to stop the fight and said to him: 'Stop, do not wound him . . . . .' . . . but as I had my two hands full and I had no quarrel with him I stopped close to him, whereupon he drew the

machete and attacked me and inflicted on me this wound and almost severed my hand, and then he turned back and went away and I came back to town to have my wound dressed. He has already maimed three people including me."

That this "took place in Mameyes, Río Grande, on the road leading to the Yunque." Being cross-examined insistently as to whether he was carrying a hatchet and was trying to attack the defendant with it, he insisted he neither was carrying it nor was he trying to attack Fuentes. That his intention in intervening was to "stop the fight."

Defendant's machete was then submitted in evidence and admitted without objection. Whereupon Campoamor Rivera testified as follows:

"It happened that a cow belonging to me disappeared and after looking for it in the palm-grove, in Luquillo, and everywhere in the neighborhood, after I had given up hope of finding it I was on the point of reporting to the police, I saw somebody with it coming along the Yunque road and I went towards him and I asked him where he was taking said cow that was mine but he did not answer; I again asked him but no answer came either, and then I approached the cow and loosened it, and on so doing the attacked me with the machete and struck me with the flat of it and went on, and Carlos Pérez was passing whereupon he drew the machete and wounded him and continued on his way up."

On cross-examination Pérez answered that he was not carrying any hatchet but staples in a bag.

José A. Carrasquillo, the third witness, testified as follows:

"While Diego Carrasquillo and I were driving a cow from the estate of don Luis González and had already crossed the river about eight o'clock .... I heard somebody shouting: 'He has wounded me.' Then as he was coming toward me I saw Carlos Pérez wounded in front of the house of Onofre Plata and they were bandaging him."

Rodríguez, the fourth witness, testified: that he seized upon the defendant "a machete and upon seizing the machete I said to him: 'I am going to arrest you for having wounded Carlos Pérez,' whereupon he said: 'Did not his hand fall to

the ground? —No, he is wounded but his hand is not hanging.' That is what the accused said to me. . . . . . He then said that he had dealt him a blow so as to sever his hand because he was going to take from him a head of cattle capriciously.

On cross-examination: "Did he tell you that Carlos Pérez was holding a hatchet when he attacked him?" He answered: "He did not make such a statement to me."

The evidence for the defense consisted of the testimony of Marcelo Vega, Ricardo Algarín, Juan Rosa and Diego Carrasquillo.

Vega testified that he was overseer of an estate belonging to José Vahamonde and that the accused was, at the time of the events, a watchman there, whose duties were "to close up openings in the fence, to make the rounds of the estate and if he found any animal on the property to take it to the municipal pen; if he finds an opening he places a post in it and he always carries with him posts and rope. . . . . Should a head of cattle be found damaging the property he drives it to the municipal pen, and he carries a machete with him for cutting posts, and ten or twelve staples also."

Algarín testified:

"On that day Juan Rosa and I were cutting down a palm-tree and Dionisio Fuentes was coming down driving a cow to the municipal pen. Campoamor ran up and overtook Dionisio and seized the rope from him and fought, and Carlos Pérez was coming down with a hatchet in his hand and a bag with staples and there was a struggle between Carlos and Dionisio, and it happened that as Dionisio saw that Carlos Pérez attacked him with the hatchet he parried with the machete and wounded him on the hand and he dropped the hatchet and I went on my way."

Rosa, third witness for the defense, recited the facts as follows:

"The day of the events we were on the boundary line of the river cutting down some palm-trees and Dionisio Fuentes upon coming down driving a cow to the municipal pen and having crossed

the river, Campoamor fought to take the cow from him, and then Carlos Pérez came for him with a hatchet in his hand, and when he saw him coming he freed himself from Campoamor and parried with the machete on being attacked by Pérez with the hatchet.''

Finally, Diego Carrasquillo testified:

''. . . . Dionisio Fuentes was coming driving some head of cattle to the municipal pen, and Campoamor was coming and saw him and crossed the river and went for him in order to take the cow away from him and both fought, he to take it away from him and he to prevent it, and Carlos Pérez was coming down with a hatchet and when he saw them fighting he ran up with the hatchet and faced Dionisio and attacked him with the hatchet and Dionisio parried with the machete.''

When the parties rested, the trial court expressed itself as follows:

''The court fully believes the evidence for the prosecution and absolutely refuses to believe the evidence for the accused. This is not an aggravated assault and battery, this is mayhem and it appears from the very testimony of the policeman that after you had committed the assault you asked the policeman whether the hand had been severed. In the opinion of the court this is a most serious and grave offense. As to the carrying of weapons, you may go about with your machete within the estate, but not on the highways. For carrying weapons the municipal court sentenced you to one month in jail, and this court gives you two months. For the crime of aggravated assault and battery this court holds that the municipal court was too lenient in sentencing you to four months in jail. The court is of the opinion that the maximum penalty should be imposed and sentences you hereby to two years in jail. This man has been crippled.''

The accused appealed in both cases and submitted his appeals on a single brief in which he has assigned five errors. The first error assigned is that the court acted without jurisdiction. He argues as follows:

''The two complaints which gave rise to the two appeals expressly state that the alleged offense was committed 'ON THE YUNQUE ROAD,' and it was so proven. (Trans. p. 1 and additional record p. 1.)

"It is judicially known, *Principe* v. *Am. R. R. Co. of P. R.,* 22 P.R.R. 282, that the 'Yunque' road, that is, the road that begins at 'Palmer' village, close by Road No. 5, Río Piedras-Fajardo, and ends in the 'Río Blanco' *barrio,* Naguabo-Juncos road, is a United States highway exclusively controlled by the Federal Government with federal roadmen, guards, policemen, overseers and inspectors.

"This being so, unquestionably any offense committed on said highway comes within the exclusive jurisdiction of the federal courts."

As stated by the prosecuting attorney in his brief:

"The actual facts publicly and notoriously known in connection with the jurisdiction of courts over the Yunque highway are as follows:

"At kilometer 32.909, between Mameyes and Luquillo, of Insular highway No. 3 connecting Río Piedras and Ponce, there starts the Yunque highway across the whole range and ends at Insular highway No. 28 between Juncos and Naguabo.

"This Yunque highway is 30.80 kils. long and is divided into three stretches, viz.:

"1.—From its junction with insular highway No. 3 at kil. 32.909 between Mameyes and Luquillo to kil. 7.40 up in the mountain where the federal forest reserve starts (insular).

"2.—From kil. 7.40 to Río Blanco barrio at kil. 21. This stretch, by reason of its crossing land belonging to the Federal Government, forest reserve, is exclusively federal, and this is why both at kil. 7.40 where said reserve begins and at kil. 21 where the same ends, there are large signs visible from great distances, giving notice to the public in general that the whole stretch of road is exclusively federal

"3.—From kil. 21, Río Blanco, to kil. 30.80 where Insular highway No. 28 leading from Juncos to Naguabo ends, (insular)."

And as it does not appear that the Insular Government has transferred to the Federal Government the stretch of road within its jurisdiction and as the evidence tends to show that the facts occurred on this stretch, the error assigned is without merit.

In *People* v. *Suárez,* 51 P.R.R. 877, 880, this court, through Mr. Justice Travieso, expressed itself as follows:

"The information in the instant case conforms to the language of the statute and is sufficient to inform the accused of the nature of the offense with which he is charged. The words 'the building occupied by the post office of Puerta de Tierra,' do not charge the accused with the commission of a federal offense. Those words have been included in the information in order to better describe and identify the property which it is alleged the accused attempted to destroy illegally. The information would be equally sufficient if it charged the accused with the intent to destroy 'the building located at the corner of Ponce de León Avenue and Padre Hoff Street.' All that the statute requires is that the explosive be used for the purpose of injuring or destroying any property, irrespective of its owner. If the accused raises the question of jurisdiction, alleging that the property which was sought to be destroyed belongs to the People of the United States and that hence the Federal Court has exclusive jurisdiction of the case, it is incumbent upon him to prove such allegation."

 The other errors assigned are to the effect that the court, in weighing the evidence, acted from passion, prejudice and bias; that it erred in convicting the defendant of carrying weapons; in failing to take into account the special circumstances in which he was when violating sections 2 and 3 of the law concerning assault and battery; and in failing to give him the benefit of the presumption of innocence and of reasonable doubt, as prescribed in section 236 of the Code of Criminal Procedure.

An examination of the transcript fails to show that the court was moved by passion, prejudice or bias. The court emphatically stated that it believed the evidence for the prosecution and that it did not give any credence to that for the defense. In doing so, the judge of the court did his duty, urged by reason and conscience. Both evidences were irreconcillable as to the way in which the facts took place. The conflict had to be resolved either way, and it was resolved against the accused. It can not be inferred from the statements of the judge that he was prejudiced against him. Nor from the fact that the penalty had been increased.

■ The cases of *People* v. *Segarra*, 36 P.R.R. 103, and *People* v. *Soto*, 34 P.R.R. 277, cited by appellant when discussing his third assignment of error, that is, where he alleges that the court erred in convicting him of carrying prohibited weapons, are not applicable in the instant case. In the above two cases it was held that the defendant was not guilty because the weapon was carried on account of his employment and within the scope thereof. The facts in the instant case are not the same. There was no need for the accused to arm himself with a machete in order to drive to the municipal pen the head of cattle which he found on his employer's property. The carrying of a prohibited weapon on the highway under such circumstances was clearly unlawful. *People* v. *Rivera*, 35 P.R.R. 499; *People* v. *González*, 40 P.R.R. 67; *People* v. *Piña*, 41 P.R.R. 757; *People* v. *Muñiz*, 45 P.R.R. 574; *People* v. *Echavarría*, 46 P.R.R. 625; *People* v. *Cardona*, 50 P.R.R. 198; *People* v. *Nevares*, 52 P.R.R. 774; *People* v. *García*, 52 P.R.R. 285.

■ Consequently and as it did not appear from the evidence which the trial judge believed, that the accused acted in self-defense, or that he had been deprived of his right to be discharged on the ground of reasonable and well founded doubt as to his guilt, it can not be concluded that there had been an infringement of the legal provisions expressly invoked by the appellant.

■ As to the penalty being excessive, we do not really think that the two years in jail given him are unwarranted in view of the result of the assault. As graphically described by the victim in his testimony: "He drew the machete and attacked me and caused this wound and almost severed my hand," adding: "He has already maimed three men including me." The case of *People* v. *Quiñones*, 22 P.R.R. 583, is clearly inapplicable.

The judgments should be affirmed.